Michaile J. Berg (AZ Bar #027166)
BERG LAW, PLLC
8710 E. Vista Bonita Dr.
Scottsdale, Arizona 85255
(480) 745-7440
mberg@berg.law

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA
PRESCOTT DIVISION

| | |
|---|---|
| Brendan Dahl, individually and on behalf of others similarly situated, | )<br>)<br>) |
| Plaintiff, | )  Case No. _____<br>)<br>) |
| v. | )  JURY DEMAND<br>) |
| American Bankers Insurance Company of Florida, | )<br>)  CLASS ACTION COMPLAINT<br>) |
| Defendant. | )<br>) |

COMES NOW the Plaintiff, Brendan Dahl ("Plaintiff"), individually and on behalf of others similarly situated, and for his Complaint against American Bankers Insurance Company of Florida ("Assurant" or "Defendant"), states and alleges the following:

**OVERVIEW OF CLAIMS**

1. This is a class action case arising out of a dispute between policyholders and their property insurer, Assurant. The seminal legal dispute before the Court is whether future labor, yet to be incurred, may be withheld by Assurant as "depreciation" when Assurant calculates and pays its actual cash value ("ACV") payment obligations for structural property losses.

2. This lawsuit addresses only the cost of future repair labor required to fix a building or structure. This lawsuit does not seek to address the propriety of depreciating any labor

incorporated or embedded within a building product. Plaintiff does not dispute that both labor and materials incurred to create a building product (such as a shingle or piece of siding) becomes integrated with the product and may be depreciated as part of the calculation of ACV benefits. *See Walker v. Auto-Owners Ins. Co.*, 517 P.3d 617, 620 n.2 (Ariz. 2022).

3. In Arizona and throughout the United States, property insurance companies file and use standardized policy forms that expressly address the subject matter of future repair labor, depreciation and ACV payments.

4. Certain property insurance policy forms expressly allow a property insurer to withhold certain future repair labor from an ACV payment. These forms are referred to herein as "Labor Depreciation Permissive Forms."

5. A Labor Depreciation Permissive Form expressly permits the withholding of certain future repair labor as "depreciation" from an ACV payment. These forms will expressly use the terms "labor" and "depreciate" or "depreciation" within the text of the policy or endorsement. For example, Allstate Insurance Company has filed and used a Labor Depreciation Permissive Form that states:

> Throughout the policy, when determining the actual cash value of the loss, *the costs necessary to repair, rebuild or replace the destroyed, damaged or stolen property may be depreciated. Such costs* subject to depreciation *may include*, but are not limited to, goods, materials, equipment*, labor, overhead and profit*, taxes, fees or similar charges.

6. In direct contrast to a Labor Depreciation Permissive Form, certain policy forms expressly prohibit an insurer from withholding future repair labor from an ACV payment. These forms are referred to herein as "Labor Depreciation Prohibitive Forms."

7. A Labor Depreciation Prohibitive Form precludes a property insurer from withholding future repair labor from an ACV payment. These forms will expressly use the terms

"labor" and "depreciate" or "depreciation" within the text of the policy or endorsement. For example, Church Mutual Insurance Company has filed and used a Labor Depreciation Prohibitive Form that states:

> "Actual cash value" means the replacement cost for parts, equipment or other property less depreciation. However, the "actual cash value" will not be less than 25% of the actual replacement cost. As used above, depreciation means the ratio of the age of the property at the time of loss to its expected useful life.
>
> *Depreciation will not be applied to labor or other costs necessary to complete the repair or replacement.*

8.      The use of Labor Depreciation Permissive Forms throughout the United States began to proliferate after 2014, when National Underwriters Company stated its position that depreciation should not apply to future repair labor unless a policy explicitly states that such labor will be depreciated when calculating actual cash value payments. *See* FC&S Bulletin, *Depreciation of Labor* (NAT'L UNDERWRITING CO. Dec. 3, 2014). National Underwriters Company is an insurance industry publisher operating under the name FC&S ("Fire, Casualty and Surety"). National Underwriters Company maintains a comprehensive library of reference books for insurance professionals and also responds to questions from insurance industry professionals.

9.      This lawsuit does *not* involve any insurance claims wherein Assurant issued a Labor Depreciation Permissive Form. Rather, this lawsuit only concerns claims for which Assurant affirmatively chose to depreciate future repair labor *after* Assurant affirmatively chose *not* to issue an insurance policy that permitted the withholding of future repair labor from an ACV payment.

10.     Most property insurers do not withhold future repair labor when making ACV payments for structural loss claims. However, some property insurers do withhold future repair labor when making ACV payments for structural loss claims but only pursuant to the terms of a

3

Labor Depreciation Permissive Form. Unlike most insurers, however, Assurant withheld future labor as depreciation under policies that did not contain a Labor Depreciation Permissive Form.

11.     The issue presented is a question of law (whether future repair labor may be withheld, as a matter of law, in the absence of a Labor Depreciation Permissive Form) and has been addressed by various courts. *See, e.g.*, *Perry v. Allstate Indem. Co.*, 953 F.3d 417, 419 (6th Cir. 2020) (interpreting Ohio law); *Mitchell v. State Farm Fire & Cas. Co.,* 954 F.3d 700 (5th Cir. 2020) (interpreting Mississippi law).

12.     This lawsuit seeks to remedy the improper withholdings of future labor from Plaintiff and putative class members' ACV payments.

## PARTIES, RESIDENCY, JURISDICTION AND VENUE

13.     Plaintiff is a citizen and resident of Arizona.

14.     Defendant is an insurance company organized under the laws of the State of Florida with a principal place of business at 11222 Quail Roost Drive, Miami, FL 33157-6596.

15.     Defendant offers property insurance in multiple states across the United States of America, specifically including the states of Arizona, California, Illinois, Kentucky, Missouri, Mississippi, Ohio, Tennessee, and Washington (hereinafter "the States at issue").

16.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings contractual and declaratory relief claims on behalf of himself and a putative class of Defendant's property insurance policyholders who are similarly situated.

17.     Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(d)(2). There are more than 100 members in the proposed class, at least one member of the proposed class has state citizenship that is different than Defendant, and the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

18. This Court has personal jurisdiction over Defendant as it has availed itself of the privilege of conducting business and issuing insurance contracts covering structures in the State of Arizona.

19. Venue is proper in this forum pursuant to 28 U.S.C. §1391(b), as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

## FACTS

### A. The Property Insurance Policies and Casualty Losses

20. Assurant sells property insurance coverage for, *inter alia*, homes and commercial buildings in multiple states, specifically including the States at issue.

21. This lawsuit only concerns property coverage for buildings and structures, and not personal contents, such as furniture and clothes.

22. Further, this lawsuit only concerns claims wherein Assurant itself accepted coverage and then Assurant itself chose to calculate actual cash value exclusively pursuant to the replacement cost less depreciation methodology.

23. The property insurance forms sold by Assurant in the States at issue are materially identical as they relate to the contractual dispute set forth herein.

24. The laws in the States at issue are materially identical as they relate to the seminal contractual dispute set forth herein, or at the least, any differences would be manageable in the class context. Specifically, these States are "replacement cost less depreciation" states for purposes of determining ACV under property insurance policies or preclude the depreciation of labor when the property insurers' policy forms do not expressly allow for the same by court decision, statute or state administrative agency in situations where the property insurer itself chooses to calculate ACV exclusively pursuant to the "replacement cost less depreciation" methodology.

25. Plaintiff contracted with Assurant for an insurance policy providing coverage for certain losses to his property located at 1615 Purple Sage Drive, Chino Valley, Arizona 86323 (the "Insured Property"). The policy number was PSM017798206 (the "Policy").

26. Plaintiff, on behalf of himself and the putative class, generally allege that all conditions precedents to coverage had occurred or been performed.

27. Plaintiff, on behalf of himself and the putative class, generally allege Defendant was not prejudiced by any action or inaction by the Plaintiff or putative class in submitting their respective claims.

28. The Insured Property suffered damage covered by the Policy. The damage to the Insured Property required replacement and/or repair.

29. Plaintiff timely submitted a claim to Defendant requesting payment for the covered loss. Defendant acknowledged the claim and assigned a claim number – 00201431126.

30. Assurant determined the loss to the Insured Property was covered by the terms of the Policy.

31. Assurant calculates its ACV payment obligations to its policyholders for structural damage loss by first estimating the cost to repair or replace the damage with new materials (replacement cost value, or "RCV"), and then Defendant subtracts the estimated depreciation.

32. The Policy does not permit the withholding of labor as depreciation as described below.

**B.     Defendant's Calculation of Plaintiff's ACV Payments**

33. In adjusting Plaintiff's claim, Assurant affirmatively and unilaterally chose to use a "replacement cost less depreciation" methodology to calculate Plaintiff's loss and to make its ACV payment. Assurant did not use any other methodology to calculate Plaintiff's ACV payment.

34.     After Plaintiff's loss was reported, Defendant sent an adjuster to inspect the damage and estimate the ACV.  Assurant uses commercially available computer software to estimate RCV, depreciation, and ACV.  The software used to calculate the payment to Plaintiff is called Xactimate®.

35.     Xactimate® software exclusively uses the "replacement cost less depreciation" methodology to calculate the "actual cash value" or "ACV" of property damage to buildings or structures. Xactimate® does not use any other methodology to calculate ACV, such as, *e.g.*, the calculation of ACV through a fair market value as determined by a real estate appraisal.

36.     Because Xactimate® does not use any methodology to calculate ACV other than "replacement cost less depreciation," a property insurer only makes an ACV payment through Xactimate® after the property insurer itself has affirmatively determined and agreed to use the "replacement cost less depreciation" methodology.

37.     As set forth in a Xactimate® estimate provided to Plaintiff, Assurant's adjuster determined the RCV, depreciation and ACV of the partial loss to the Insured Property. The estimate included the cost of materials and labor required to complete the repairs.

38.     In calculating its ACV payment obligations to Plaintiff, Plaintiff was underpaid on his ACV claim as more fully described below.

C.     **Defendant's Practice of Withholding Labor as Depreciation**

39.     When it calculated Plaintiff's ACV benefits owed under the Policy, Assurant withheld costs for both the materials and future repair labor required to repair or replace Plaintiff's building as depreciation, even though labor does not depreciate in value over time. Assurant withheld labor costs throughout its ACV calculations as depreciation.

7

40. Like all property insurance claims estimating software, the specific commercial claims estimating software used by Assurant allows for the depreciation of materials only or the depreciation of both material and labor in its depreciation option setting preferences.

41. In this pleading, whenever reference is made to withholding "labor" as depreciation, "labor" means intangible non-materials, specifically including both the labor costs and the laborers' equipment costs and contractors/laborers' overhead and profit necessary to restore property to its condition *status quo ante*, as well as removal costs to remove damaged property, under commercial claims estimating software.

42. Assurant's withholding of labor costs as depreciation associated with the future repair or replacement of Plaintiff's property resulted in Plaintiff receiving payment for his loss in an amount less than he was entitled to receive under the Policy. Assurant breached its obligations under the Policy by improperly withholding the cost of labor as depreciation.

43. Plaintiff himself cannot determine the precise amount of labor that has been withheld based only upon the written estimate provided. To determine the precise amount of labor withheld, it is necessary to have access to the commercial property estimating program at issue (Xactimate®), as well as the electronic file associated with the estimate.

44. While a property insurer may lawfully depreciate material costs when calculating the amount of an ACV payment owed to an insured, it may not lawfully withhold repair labor as depreciation under the policy forms at issue in the States at issue when using a replacement cost less depreciation methodology.

45. Assurant's failure to pay the full cost of the labor necessary to return Plaintiff's structure to the *status quo ante* left Plaintiff under-indemnified and underpaid for his loss.

46. Plaintiff disputes whether portions of the agreed-to and undisputed amounts of labor, as determined by Defendant itself, may be withheld by Assurant as "depreciation" from Defendant's ACV payment under the terms and conditions of the Policy.

47. Assurant materially breached its duty to indemnify Plaintiff by withholding labor costs from its ACV payment as depreciation, thereby paying less than Plaintiff was entitled to receive under the terms of the Policy, including but not limited to depriving Plaintiff of the time use of money resulting from the time period of labor withholdings in the form of prejudgment interest.

## AMOUNT IN CONTROVERSY

48. Upon information and belief, the amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

## CLASS ACTION ALLEGATIONS

49. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this lawsuit as a class action on behalf of himself and on behalf of others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Only to the extent it is a requirement under applicable law, the proposed class herein is ascertainable.

50. The proposed class that Plaintiff seeks to represent is tentatively defined as follows:

All American Bankers Insurance Company of Florida policyholders (or their lawful assignees) who made:

(1) a structural damage claim for property located in the States at issue; and

(2) for which Assurant accepted coverage and then chose to calculate actual cash value exclusively pursuant to the replacement cost less depreciation methodology and not any other methodology, such as fair market value; and

9

(3) which resulted in an actual cash value payment during the class period from which non-material depreciation was withheld from the policyholder; or which should have resulted in an actual cash value payment but for the withholding of non-material depreciation causing the loss to drop below the applicable deductible.

In this definition, "non-material depreciation" means application of either the "depreciate removal," "depreciate non-material" and/or "depreciate O&P" option settings within Xactimate® software or similar depreciation option settings in competing commercial software programs.

The class excludes any claims for which the applicable limits of insurance was exhausted by the initial actual cash value payment. The class also excludes any claims, or portions of claims, arising under Labor Depreciation Permissive Forms, *i.e.*, those forms and endorsements expressly permitting the "depreciation" of "labor" within the text of the policy form, unless the use of those forms violate the law of the respective States at issue.

The class period for the proposed class is the maximum time period allowed by law.

51.     Plaintiff reserves the right to amend the definition of the proposed class through discovery. The following persons are expressly excluded from the class: (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; and (3) the Court to which this case is assigned and its staff.

52.     Plaintiff and members of the putative class as defined all have Article III standing as all such persons and entities, at least initially, received lower claim payments than permitted under the policy. Certain amounts initially withheld as labor may be later repaid to some policyholders with replacement cost provisions in their policies, if any. However, policyholders who have been subsequently repaid for initially withheld labor still have incurred damages, at the least, in the form of the lost "time value" of money during the period of withholding, *i.e.*, statutory or common law prejudgment interest on the amounts improperly withheld, for the time period of withholding.

53. The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiff reasonably believes that hundreds or thousands of people geographically dispersed across the States at issue have been damaged by Defendant's actions. The names and addresses of the members of the proposed class are readily identifiable through records maintained by Defendant or from information readily available to Defendant.

54. The relatively small amounts of damage suffered by most members of the proposed class make filing separate lawsuits by individual members economically impracticable.

55. Defendant has acted on grounds generally applicable to the proposed class in that Defendant has routinely withheld labor costs as described herein in its adjustment of property damage claims under its policies of insurance. It is reasonable to expect that Defendant will continue to withhold labor to reduce the amount it pays to its insureds under its policies absent this lawsuit.

56. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

    a. Whether Defendant's policy forms allow the withholding of labor costs in the calculation of ACV payments under the replacement cost less depreciation methodology;

    b. Whether Defendant's policy language is ambiguous;

    c. Whether Defendant's withholding of labor costs in the calculation of ACV payments breaches the Defendant's insurance policy forms;

    d. Whether Defendant has a custom and practice of withholding labor costs in the calculation of ACV payments;

  e. Whether Plaintiff and members of the proposed class have been damaged as a result of Defendant's withholding of labor costs in the calculation of ACV payments owed; and

  f. Whether Plaintiff and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act.

  57. Plaintiff's claims are typical of the claims of the proposed class members, as they are all similarly affected by Defendant's customs and practices concerning the withholding of labor. Further, Plaintiff's claims are typical of the claims of the proposed class members because Plaintiff's claims arose from the same practices and course of conduct that give rise to the claims of the members of the proposed class and are based on the same factual and legal theories. Plaintiff is not different in any material respect from any other member of the proposed class.

  58. Plaintiff and his counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiff's interests do not conflict with the interests of the proposed class she seeks to represent. Plaintiff has retained lawyers who are competent and experienced in class action and insurance litigation. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the members of the proposed class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the proposed class while recognizing the risks associated with litigation. Plaintiff reserves the right to have unnamed class members join him in seeking to be a class representative.

  59. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed members of the proposed class in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims

is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

60. In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiff and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

61. Questions of law or fact common to Plaintiff and members of the proposed class, including those identified above, predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amount due to many individual members of the proposed class is likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual members of the proposed class to seek and obtain relief. On the other hand, a class action will serve important public interests by permitting consumers harmed by Defendant's unlawful practices to effectively pursue recovery of the sums

owed to them, and by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

62. Class certification is further warranted because Defendant has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

63. Plaintiff may seek, in the alternative, certification of issues classes.

64. Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

## COUNT I - BREACH OF CONTRACT

65. Plaintiff restates and incorporates by reference all preceding allegations.

66. Defendant entered into policies of insurance with Plaintiff and members of the proposed class. These insurance policies govern the relationship between Defendant and Plaintiff, and members of the proposed class, as well as the manner in which claims for covered losses are handled.

67. These policies of insurance are binding contracts under the law of the States at issue and supported by valid consideration in the form of premium payments in exchange for insurance coverage.

68. Defendant drafted the insurance policies at issue, which are essentially identical in all respects material to this litigation concerning the withholding of labor as depreciation from ACV payments for structural loss when Defendant calculates ACV under a replacement cost less depreciation methodology.

69. To receive or be eligible to receive ACV claim payments in the first instance, Plaintiff and the putative class members complied with all material provisions and performed all

of their respective duties with regard to their insurance policy or Defendant waived compliance with respect to such contractual duties.

70. Defendant breached its respective contractual duties to pay Plaintiff and members of the proposed class the ACV of their claims by unlawfully withholding labor costs as described herein.

71. Additionally, Defendant's actions in breaching its contractual obligations to Plaintiff and members of the proposed class benefited and continues to benefit Defendant. Likewise, Defendant's actions damaged and continue to damage Plaintiff and members of the proposed class.

72. Defendant's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiff and members of the proposed class.

73. Considering the foregoing, Plaintiff and members of the proposed class are entitled to recover damages sufficient to make them whole for all amounts unlawfully withheld from their ACV payments, including prejudgment interest as may be allowed by law.

## COUNT II - DECLARATORY JUDGMENT AND RELIEF

74. Plaintiff restates and incorporates by reference all preceding allegations.

75. This Court is empowered by the Declaratory Judgment Act as codified at 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to declare the rights and legal relations of parties regardless of whether further relief is or could be claimed.

76. A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

77. Plaintiff and members of the proposed class have all complied with all relevant conditions precedent in their contracts.

78. Plaintiff seeks, individually and on behalf of the proposed class, a declaration that Defendant's property insurance contracts prohibit the withholding of labor costs as described herein when adjusting losses under the methodology employed herein.

79. Plaintiff further seeks, individually and on behalf of the proposed class, any and all other relief available under the law arising out of a favorable declaration.

80. Plaintiff and members of the proposed class have and will continue to suffer injuries.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court:

1. Enter an order certifying this action as a class action, appointing Plaintiff as the representative of the class, and appointing Plaintiff's attorneys as counsel for the class;

2. Enter a declaratory judgment, declaring that Defendant's withholding of labor costs as depreciation is contrary to and breaches the insurance policy issued to Plaintiff and members of the class;

3. Enter a declaration, and any preliminary and permanent injunction and equitable relief against Defendant and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with it, from engaging in each of the policies, practices, customs, and usages complained of herein, as may be allowed by law;

4. Enter an order that Defendant specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of their past and present practices complained of herein;

5. Award compensatory damages for all sums withheld as labor costs under the policy, plus prejudgment interest on all such sums, to Plaintiff and members of the proposed class;

6. Award compensatory damages to Plaintiff for all amounts to which it is entitled;

7. Award costs, expenses, and disbursements incurred herein by Plaintiff and members of the proposed class as may be allowed by law, including but not limited to amounts available under the common fund doctrine;

8. Pre- and Post-Judgment interest; and

9. Grant such further and additional relief as the Court deems necessary and proper.

Dated:  October 26, 2023

Respectfully submitted,

*s/ Michaile J. Berg*
Michaile J. Berg (AZ Bar #027166)
BERG LAW, PLLC
8710 E. Vista Bonita Dr.
Scottsdale, Arizona 85255
(480) 745-7440
mberg@berg.law

Erik D. Peterson* (KY Bar #93003)
ERIK PETERSON LAW OFFICES, PSC
110 W. Vine St., Ste. 300
Lexington, KY 40507
Telephone: 800-614-1957
erik@eplo.law

T. Joseph Snodgrass* (MN Bar #231071)
SNODGRASS LAW LLC
100 South 5th Street, Suite 800
Minneapolis, MN 55402
Tel: (612) 448-2600
jsnodgrass@snodgrass-law.com

J. BRANDON McWHERTER*
(TN Bar #21600)
**McWHERTER SCOTT BOBBITT PLC**
341 Cool Springs Blvd., Suite 230
Franklin, TN  37067
Tel: (615) 354-1144
brandon@msb.law

*Attorneys for Plaintiff and
Putative Class Representative*

**to file pro hac vice admission*