WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brendan Dahl, | No. CV-23-08584-PCT-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| American Bankers Insurance Company of Florida, | |
| Defendant. | |

This is a putative class action arising out of a dispute between Arizona policyholders and their property insurer. Before the Court is Defendant American Bankers Insurance Company of Florida's ("American Bankers") motion to dismiss Plaintiff Brendan Dahl's First Amended Complaint ("FAC") (Doc. 11). The motion is fully briefed.[1]

**I.   Background**

Dahl brings this action for breach of contract against his insurer, American Bankers, on behalf of himself and a class of similarly situated insureds.[2] (Doc. 11 ¶ 1.) Dahl contracted with American Bankers for an insurance policy providing coverage for certain losses to his property. (*Id.* ¶ 31.) If an insured property suffers damages requiring replacement or repair, the policy provides that an insurer may make an "actual cash value" ("ACV") payment, defined as "the amount it would cost you to repair or replace damaged

---

[1] Oral argument is denied because the motion is adequately briefed, and oral argument will not help the Court resolve the issues presented. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

[2] The following facts are drawn from the allegations in the FAC (Doc. 11), which the Court accepts as true for the purposes of this order.

property with material of like kind and quality, less deduction for physical deterioration and depreciation, including obsolescence." (Doc. 8-1 at 12, 17.)[3]

Dahl alleges that his "Insured Property suffered damage covered by the Policy" which required replacement or repair. (Doc. 11 ¶ 35.) He timely submitted a claim, and American Bankers determined that the loss was covered by the policy. (*Id.* ¶¶ 36–37.) In adjusting Dahl's claim, American Bankers chose to use a "replacement cost less depreciation" ("RCLD") methodology to calculate the ACV payment.[4] (*Id.* ¶ 43.) When American Bankers calculated Dahl's ACV benefits, it "withheld costs for both materials and future repair labor . . . as depreciation." (*Id.* ¶ 53.) Dahl alleges that, in so doing, American Bankers breached the policy by paying him less than he was entitled to receive. (*Id.* ¶ 61.) Based on these allegations, Dahl, on behalf of a putative class, asserts a claim for breach of contract and seeks, among other relief, a declaratory judgment that American Bankers's property insurance contracts prohibit the withholding of future repair labor costs when adjusting losses using the RCLD methodology. (*Id.* ¶¶ 108, 117.) American Bankers moves to dismiss the case for failure to state a claim. (Doc. 13.)

## II.    Legal Standard

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include sufficient facts to demonstrate that the claim is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When analyzing the sufficiency of a complaint, the Court accepts all well-pled factual allegations as true and construes those allegations in a light most favorable to the non-moving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Still, the Court is not required "to accept as true a legal conclusion couched

---

[3] The Court has considered and includes statements from the insurance contract as a "document incorporated by reference in the complaint." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003) ("A court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.").

[4] American Bankers uses a commercially available software called Xactimate to estimate the ACV. (*Id.* ¶ 46.) Xactimate software exclusively uses the RCLD methodology to calculate the ACV of property damage. (*Id.* ¶ 48.)

as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). What's more, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). A claim is not plausible if the complaint clearly discloses a "complete and obvious defense" to the claim. *Franklin v. Murphy*, 745 F.2d 1221, 1229 (9th Cir. 1984).

**III. Analysis**

American Bankers argues that Dahl has not plausibly alleged his breach of contract claim, but even if the claim stands, American Bankers argues that declaratory relief is inappropriate because Dahl has an adequate remedy at law. The Court addresses each argument in turn.[5]

**a. Dahl has plausibly stated a claim for breach of contract under *Walker*.**

"The interpretation of an insurance contract generally is a question of law for the court." *Lennar Corp. v. Transamerica Ins. Co.*, 256 P.3d 635, 641 (Ariz. Ct. App. 2011). The Court gives the provisions of an insurance contract their plain and ordinary meaning considering the transaction as a whole and resolves ambiguities against the insurer. *See Walker v. Auto-Owners Ins. Co.*, 517 P.3d 617, 620 (Ariz. 2022); *Sparks v. Republic Nat'l Life Ins. Co.*, 647 P.2d 1127, 1132 (Ariz. 1982).

American Bankers argues that Dahl's claim is foreclosed by *Walker*. (Doc. 13 at 1–2.) *Walker* addressed a certified question posed by this Court: whether an insurer may depreciate the costs of both materials *and* labor in determining the ACV when an insurance policy does not define the terms "actual cash value" or "depreciation." 517 P.3d at 618. Significant to the Court when posing this question was that the policy did not "specifically state[] what was or was not included in calculating depreciation and/or actual cash value."

---

[5] The Court has considered the supplemental authorities submitted by Dahl (Docs. 27 & 28). It has not considered Dahl's submissions of bulletin postings from the Alaska Department of Commerce, Community, and Economic Development (Doc. 23) and the Michigan Department of Insurance Financial Services (Doc. 30). *See Collins v. City of Phoenix*, No. CV-23-01440-PHX-DLR, 2024 WL 4528165, at *8 (D. Ariz. Oct. 18, 2024); *Schnellecke Logistics USA LLC v. Lucid USA Inc.*, No. CV-22-01893-PHX-SMB, 2023 WL 5720242, at *1 (D. Ariz. Apr. 12, 2023) ("The purpose of a Notice of Supplemental Authority is to inform the Court of newly decided cases that are relevant to the dispute before it; it is not a means to submit additional argument or factual evidence.").

*Walker v. Auto-Owners Ins. Co.*, No. CIV 20-449-TUC-CKJ, 2021 WL 4513816, at *2 (D. Ariz. Oct. 1, 2021).

The policy in *Walker* did not define ACV. After an exhaustive analysis, the Arizona Supreme Court concluded that "the Walkers' Policy, which fails to prescribe any other methodology for determining actual cash value, adopts the RCLD methodology." *Walker*, 517 P.3d at 620–21. Then the *Walker* court posed its own question: whether the RCLD methodology permits depreciation of labor. *Id.* at 622. The court noted that the insurer failed to expressly include depreciation of labor in its ACV calculation, and it neglected to define both "ACV" and "depreciation" in its policy. *Id.* at 623. When an insurer seeks to limit its liability, it must "employ language which clearly and distinctly communicates to the insured the nature of the limitation." *Id.* (citation omitted). Therefore, "if a policy adopts the RCLD methodology for determining [ACV] . . . the insurer is precluded from depreciating labor when determining the [ACV] of the covered loss." *Id.*

American Bankers argues that *Walker*'s holding is limited to circumstances where the insurer has not defined ACV in its policy. (Doc. 13 at 7.) Dahl responds that *Walker*'s holding applies to all insurance policies "that adopt the RCLD methodology for calculating ACV." (Doc. 17 at 2.) The Court agrees. That the policy in *Walker* failed to define "ACV" and "depreciation" was important to the decision, but it was not dispositive. The court ultimately rested its holding on the fact that the insurer chose the RCLD method for calculating ACV. This interpretation is in line with decisions of other courts applying *Walker*. *See, e.g.*, *Generation Changers Church v. Church Mut. Ins. Co.*, 693 F. Supp. 3d 795, 816 (M.D. Tenn. 2023); *Fassina v. Liberty Mut. Fire Ins. Co.*, No. 22-cv-11466-DJC, 2024 WL 1018440, at *5 (D. Mass. March 8, 2024).

American Bankers insists that the inclusion of a definition of ACV that specifies it will deduct depreciation necessarily allows it to depreciate future repair labor. Not so. Although the policy defines ACV, it does not "clearly and distinctly communicate to the insured the nature of the limitation" it intended to impose. *Walker*, 517 P.3d at 623. The *Walker* court was concerned with the definition of ACV insofar as it would address *the*

*methodology used to calculate it*. By defining ACV the policy merely removes any ambiguity as to whether American Bankers employs the RCLD method (it does). However, the policy does not define what "depreciation" includes. The failure to define "depreciation" in the policy in *Walker* was equally as important to the court as the failure to define ACV.[6]

In fact, the policy here and the policy in *Walker* are similar. The policy in *Walker* provided that the insurer "shall pay the actual cash value of the property at the time of the loss [which] includes a deduction for depreciation." *Id.* at 619. The policy here, states that American Bankers will pay "the amount it would cost you to repair or replace damaged property with material of like kind and quality, less deduction for physical deterioration and depreciation, including obsolescence." (Doc. 8-1 at 12.) The language in the *Walker* policy is not distinguishable from the language here.

American Bankers requests the Court not to retroactively apply *Walker*'s rule. "Normally, [the Arizona Supreme Court's] decisions in civil cases operate retroactively as well as prospectively." *Lowing v. Allstate Ins. Co.*, 859 P.2d 724, 731 (Ariz. 1993). The *Walker* decision is no exception. Though the Arizona Supreme Court had not previously dealt with the labor depreciation issue central to *Walker*, it applied its decision retroactively to the insurance policy at issue there. *Walker*, 517 P.3d at 624. And it has since been applied to other cases where different insurance policies were involved. *See, e.g.*, *Generation Changers Church*, 693 F. Supp. 3d at 816; *Fassina*, 2024 WL 1018440, at *5. The Court is satisfied that retroactive application of the rule here would not be unjust. Accordingly, Dahl has stated a plausible claim.

### b. Because it is unclear that money damages would provide Dahl complete relief, the Court will not strike Dahl's request for declaratory relief.

American Bankers argues that Dahl's demand for declaratory relief should be

---

[6] Other jurisdictions have found differently. *See, e.g.*, *Graves v. Am. Fam. Mut. Ins. Co.*, 686 F. App'x 536, 539–40 (10th Cir. 2017); *Riggins v. Am. Fam. Mut. Ins. Co.*, 281 F. Supp. 3d 785, 788–89 (W.D. Mo. 2017); *Accardi v. Hartford Underwriters Ins. Co.*, 838 S.E.2d 454, 458 (N.C. 2020). But that does not permit the Court to depart from *Walker* in a case governed by Arizona law.

- 5 -

"dismissed" because it is duplicative of the contract claim. (Doc. 13 at 16.) Before addressing the merits of this argument, the Court will properly frame this issue.

The FAC contains two separately enumerated "Counts." Count I is a claim for breach of contract and Count II is titled "Declaratory Judgment and Relief." (Doc. 11 at 23, 25.) A declaratory judgment, however, is a remedy—not an independent, substantive cause of action. *See City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022) ("We agree with our sister circuits that have considered the issue that the Declaratory Judgment Act does not provide an affirmative cause of action where none otherwise exists."); *Grady v. Tri-City Nat. Bank*, No. CV 12-2507-PHX-JAT, 2013 WL 2147541, at *6 (D. Ariz. May 15, 2013) ("Plaintiffs have a 'Count' for declaratory judgment. Despite pleading declaratory judgment as a separate count, however, Plaintiffs clearly seek declaratory judgment as a remedy in this case.").

When the Declaratory Judgment Act ("DJA") is used by "[a] potential defendant" to "preempt a suit by a potential plaintiff—the latter of whom could sue pursuant to an independent cause of action," then it is appropriate to plead the DJA claim as a substantive cause of action because, in that context, the plaintiff/potential defendant "in effect borrows the underlying cause of action that would be available to the [defendant]/potential plaintiff." *City of Reno*, 52 F.4th at 879. Accordingly, if *American Bankers* had initiated this action to seek a declaration that its interpretation of the policy is correct, it could plead as a substantive "count" a "claim" under the DJA for declaratory relief. In that context, American Bankers functionally would be borrowing Dahl's breach of contract claim and seeking a preemptive judgment that American Bankers is not in breach.

Because Dahl is not using the DJA preemptively or anticipatorily, he is not borrowing any substantive cause of action belonging to American Bankers. Dahl's claim is a substantive claim for breach of contract—which already belongs to him—and he invokes the DJA merely to obtain additional relief beyond monetary damages. In this context, it is technically improper and unnecessary to plead a demand for declaratory relief as a separate count. It should be stated in the prayer for relief section of the FAC. *See*

*Cogent Healthcare of Arizona PC v. Blue Cross and Blue Shield of Arizona Inc.*, No. CV-23-02119-PHX-DLR, 2024 WL 4347772, at *2 n.3 (D. Ariz. Sep. 30, 2024) (discussing this common "mislabeling of remedies as causes of action"). The upshot is that Count II of the FAC is not a separate *claim*. It is a demand for additional relief on the breach of contract claim alleged in Count I.

Though declaratory relief is unavailable where an adequate remedy at law exists, it remains appropriate "where a breach of contract claim will not settle all of the contractual issues concerning which plaintiff seeks declaratory relief." *StreamCast Networks, Inc. v. IBIS LLC*, No. CV 05-04239 MMM, 2006 WL 5720345, at *4 (C.D. Cal. May 2, 2006). Dahl seeks "a declaration that [American Bankers's] property insurance contracts prohibit the withholding of labor costs as described when adjusting losses under the methodology employed herein." (Doc. 11 ¶ 117.) Declaratory relief would clarify American Bankers's duties under the contract "not only in the past, but also in the present and future." *Brown v. State Farm Fire & Cas. Co.*, No. 2:23-cv-04002-MDH, 2023 WL 5599630, at *5 (W.D. Mo. Aug. 29, 2023). At the pleading stage, the Court cannot determine that money damages would afford Dahl complete relief, given the ongoing contractual relationship between the parties and the possibility of future misinterpretations of the relevant provisions. Because money damages will only address American Bankers's past breach and will not necessarily prevent American Bankers from misinterpreting the relevant policy provisions in the future, declaratory relief may be an appropriate remedy. *Shumway v. Allstate Vehicle & Prop. Ins. Co.*, No. CV-23-00699-PHX-DLR, 2024 WL 3376087, at *5 (D. Ariz. July 11, 2024) (concluding same).

**IT IS ORDERED** that American Bankers's motion to dismiss (Doc. 13) is **DENIED**.

Dated this 26th day of November, 2024.

_____
Douglas L. Rayes
Senior United States District Judge